FILED

2005 May-23  PM 03:00
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| AMERICAN CASUALTY COMPANY and ALABAMA REHAB WORKS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil Action No.  CV-04-S-776-NW |
| | ) | |
| STATE AUTOMOBILE MUTUAL INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

This action is before the court on defendant's motion for summary judgment.[1] Plaintiffs filed this lawsuit under the State of Alabama's enactment of the Uniform Declaratory Judgment Act, Ala. Code §§ 6-6-220 to -32 (1975), seeking a judgment and declaration that defendant, an insurance provider, is obligated to contribute to a settlement sum paid by plaintiffs in a separate proceeding.[2] Upon consideration of the pleadings, briefs,[3] and evidentiary submissions,[4] the court concludes that defendant's motion for summary judgment is due to be granted.

---

[1] Doc. no. 6.

[2] Doc. no. 1 (appended complaint), ¶¶ 4, 16-18.

[3] Doc. no. 7 (Defendant's Brief); doc. no. 13 (Plaintiff's Response); doc. no. 14 (Defendant's Reply).

[4] Doc. no. 7 (Defendant's evidentiary submission) and doc. no. 13 (Plaintiffs' evidentiary submission).

# I. FACTUAL BACKGROUND

Plaintiff Alabama Rehab Works, Inc. ("Alabama Rehab") is a corporate entity that owns and operates a physical therapy clinic in Florence, Lauderdale County, Alabama.[5] The company purchased two insurance policies to protect its clinic and staff from liability claims, both of which were in effect from November 2000 to November 2001. One policy was purchased from plaintiff American Casualty Company ("American Casualty"), and the other from defendant, State Automobile Mutual Insurance Company ("State Auto").[6] Only the terms of the latter policy are relevant.

## A.    Scope of Insurance Coverage

Alabama Rehab was named as the insured party in the "Series One Businessowners Policy" issued by State Auto.[7] The policy insured Alabama Rehab against liability resulting from bodily injury suffered on the premises of its Florence physical therapy clinic, subject to certain exclusions. In relevant part, the policy read as follows:

### A.    COVERAGES

---

[5] *See* doc. no. 1 (appended complaint), ¶ 2; doc. no. 13 (Plaintiff's Response), Ex. A (Fisher deposition), at 9.

[6] *See* doc. no. 7 (Defendant's Brief and Evidentiary Submission), Ex. A (copy of American Casualty policy) (in effect November 6, 2000 to November 6, 2001) and Ex. D (copy of State Auto policy) (in effect November 13, 2000 to November 13, 2001).

[7] *See id.*, Ex. D.

**1.      Business Liability**

      **a.**      We [defendant State Auto] will pay those sums that the insured [plaintiff Alabama Rehab] becomes legally obligated to pay as damages because of "bodily injury"[8] . . . to which this insurance applies. . . . .

      **b.**      This insurance applies:

      **(1)**      To "bodily injury" . . . only if:

           **(a)** The "bodily injury" . . . is caused by an "occurrence"[9] that takes place in the "coverage territory"[10] . . . . [11]

. . . .

**B.      EXCLUSIONS**

    **1.      Applicable to Business Liability Coverage —**

This insurance does *not* apply to:

. . . .

      **j.**      "Bodily injury" . . . due to rendering or failure to render any professional service.  This includes but is

---

[8] The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time."  Doc. no. 7 (Defendant's Brief and Evidentiary Submission), Ex. D ("Series One Policy"), section titled "Businessowners Liability Coverage Form," at provision F ("Liability and Medical Expenses Definitions").

[9] The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."  *Id.*

[10] The policy defines "coverage territory," in relevant part, as "[t]he United States of America (including its territories or possessions)."  *Id.*

[11] *Id.*, section titled "Businessowners Liability Coverage Form," at provision A(1)(a) and (b).

not limited to:

. . . .

(5)    Any health service or treatment[.][12]

The parties do not dispute that these terms were in effect on October 17, 2001, the

date on which Ms. Debra Brown was injured while receiving physical therapy at the

Alabama Rehab clinic.[13]

## B.    The Slip and Fall

Ms. Brown was enrolled in the clinic's "work hardening" program, and

Alabama Rehab assigned Chad Fisher, a "Physical Therapist Assistant," to assist her.[14]

Fisher explained that:

> Work hardening is a program that doctors order for patients maybe after
> back surgery, shoulder surgery, car accident.  A lot of times it involves
> a patient with back problems and what it is, it's a set of activities that are
> similar to what a patient will be doing when they go back to work . . . .
> For example, if they work assembly line type work, we might have them
> carrying things across the gym, if they work where they may be pushing
> or pulling things, we had a sled set up for that . . . . We had stations
> where they could do overhead activities and sometimes it might just be
> sitting at a computer working and, you know, keeping good posture, just
> things that are workplace type situations.[15]

Fisher's "Physical Therapy Note" for October 17, 2001 indicates that Brown

---

[12] *Id.* at provision (B)(1) (emphasis supplied).

[13] Doc. no. 13 (Plaintiff's Response), Ex. A (Fisher deposition), at 15.

[14] *Id.* at 9, 15.

[15] *Id.* at 13-14.

was scheduled to perform six exercises that day, including "floor-waist," "treadmill," "overhead," "knot tying," "push sled," and "pull sled."[16] Under Fisher's supervision, Brown began her session with three minutes of "overhead" exercises, and then proceeded to the "knot tying" exercise.[17]

That particular procedure was performed atop an elevated, wooden platform, approximately four feet wide, eight feet in length, and a short distance above floor level.[18] The platform was accessible by climbing a series of steps.[19] The steps had no functional purpose other than gaining access to the elevated platform.[20] Under Fisher's supervision, Ms. Brown climbed the steps and stood atop the platform. From there, she reached above her head with a piece of rope, tied knots to hooks that were fixed above her, and repeated the exercise. This was designed to build endurance in Brown's upper back.[21]

Of course, Brown had to descend after completing this exercise; and while doing so, she fell. Fisher recalled that "she was coming down the steps when she fell and just kind of missed a step, just pretty much an accident."[22] Fisher recorded in his

---

[16] *Id.*, Plaintiff's Ex. 1 ("Physical Therapy Note").

[17] *See id.*

[18] *See id.*, Ex. A (Fisher deposition), at 18-22.

[19] *See id.*

[20] *See id.* at 18.

[21] *See id.* at 32, 37.

[22] *Id.* at 22.

"Daily Note" for the events of that day that "[t]reatment was ended today when patient fell coming down steps after overhead activity . . . Continue tomorrow if patient is able."[23]  (Fisher elaborated at his deposition that Ms. Brown "had just finished a treatment at the time of her fall, a section of her treatment, a portion, and . . . so she ended that section of her treatment.  She was coming down and she fell."[24])

Fisher was asked to explain why Ms. Brown performed the knot-tying exercise atop a platform, rather than at floor level, and he testified that:

> The reason in Ms. Brown's case that she was up there was because that's where the rings were.  A patient would — they would not be up [there] were they not going up there to use those knots which was — or use the rings to tie the knots.  So a patient would not be up there were they not under the direction of the therapist, but that's — there's no reason for you to be up there.[25]

## C.  Plaintiffs' Suit

After Ms. Brown informed plaintiff American Casualty of her injuries, the company decided to settle Ms. Brown's claims on behalf of Alabama Rehab, in its capacity as  Alabama Rehab's insurance provider.[26]  American Casualty invited defendant, State Auto, on May 31, 2003, "to participate in [the settlement] discussions

---

[23] Doc. no. 13 (Plaintiff's Response), Ex. A (Fisher deposition) at 29-30; *see also id.*, Defendant's Ex. 3 ("Daily Note" in Fisher's original handwriting).

[24] *Id.*, Ex. A (Fisher deposition) at 31.

[25] *Id.* at 43-44.

[26] *See id.* at 31.

and to contribute towards any settlement obtained."[27]   American Casualty contacted State Auto a second time on August 15, 2003, with the same offer.[28]   State Auto declined, stating that Ms. Brown's slip and fall was excluded under the terms of its insurance policy.[29]

American Casualty, on behalf of Alabama Rehab, entered into a settlement agreement with Ms. Brown on October 2, 2003, paying a lump-sum amount and funding an annuity.   The total out-of-pocket amount paid was over $75,000.[30] American Casualty and Alabama Rehab commenced the present action against State Auto in the Circuit Court of Lauderdale County, Alabama, on February 26, 2004.  The case was removed to this court on April 15, 2004, on the basis that there was complete diversity of citizenship among the parties, and the amount in controversy exceeded $75,000, exclusive of interest and costs.[31]   *See* 28 U.S.C. §§ 1332(a), 1441(a).

Plaintiffs seek a declaration that State Auto had a duty under the terms of its insurance policy to indemnify Alabama Rehab for liability resulting from Ms. Brown's slip and fall, and to contribute to the funds expended by plaintiffs to settle

---

[27] Doc. no. 13 (Plaintiff's Response), Ex. B (Albert Luther letter dated May 31, 2003).

[28] *See id.*, Ex. C (Albert Luther letter dated August 15, 2003).

[29] Doc. no. 7 (Defendant's Brief and Evidentiary Submission), Ex. A at August 20, 2003 letter from Eva Tusa to Albert Luther.

[30] Doc. no. 1 (appended complaint), ¶ 14.

[31] *See* doc. no. 1 (Notice of Removal).

the claims brought by Ms. Brown.  State Auto moved for summary judgment,[32] and plaintiffs submitted a joint response.[33]  The controversy now is ripe for decision.

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides, in part, that summary judgment not only is proper, but also that it "*shall be* rendered *forthwith* if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(c) (emphasis supplied).  Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case.  The relevant rules of substantive law dictate the materiality of a disputed fact.  A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving

---

[32] Doc. no. 6.

[33] Doc. no. 13.

8

party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v.*

*Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*).

## III.  DISCUSSION

### A.      Choice of Law

This is a diversity case.  *See* 28 U.S.C. § 1332(a)(1).  Accordingly, the court

must apply state substantive law and federal procedural rules.  *See, e.g., Erie Railroad*

*Co. v. Tompkins*, 304 U.S. 64 (1938); *National Distillers and Chemical Corp. v.*

*Brad's Machine Products, Inc.*, 666 F.2d 492, 494-45 (11th Cir. 1982).  Furthermore,

> [b]ecause federal courts in diversity cases apply the substantive law of
> the states in which they sit, this court must apply the Alabama conflict
> of law rules.  *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).  In the
> context of insurance cases, the court is obliged to apply the laws of the
> state where the last act is "receipt and acceptance" of the insurance
> policy. *Brown Machine Works & Supply, Inc. v. Insurance Co. of North*
> *America, Inc.*, 951 F.Supp. 988, 992 (M.D. Ala.1996).

*American Motorists Ins. Co. v. Southern Security Life Ins. Co.*, 80 F. Supp. 2d 1285,

1287 (M.D. Ala. 2000).  *See also, e.g., Ailey v. Nationwide Mut. Ins. Co.*, 570 So. 2d

598, 599 (Ala. 1990) ("Because that policy was issued to Ailey in Tennessee, we will

apply Tennessee law in interpreting it.").  The parties do not dispute that "[t]he policy

at issue in this controversy was issued to Alabama Rehab Works in Lauderdale

County, Alabama."[34]  Accordingly, the court will apply Alabama law in interpreting the terms of the insurance policy issued by State Auto.

**B.     Insurance Contract Interpretation**

According to Alabama law, "[g]eneral rules of contract law govern an insurance contract.  The court must enforce the insurance policy as written if the terms are unambiguous."  *Safeway Ins. Co. of Alabama v. Herrera*, Nos. 1031115 and 1031165, 2005 WL 388524, at *2 (Ala. Feb. 18, 2005) (citing *Twin City Fire Ins. Co. v. Alfa Mut. Ins. Co.*, 817 So. 2d 687, 691 (Ala. 2001); *Liggans R.V. Ctr. v. John Deere Ins. Co.*, 575 So. 2d 567, 569 (Ala.1991)).  In other words, "insurance companies are entitled to have their policy contracts enforced as written, rather than risking their terms either to judicial interpretation or the use of straining language, and the fact that adverse parties contend for different constructions does not mean that the disputed language is ambiguous."  *Gregory v. Western World Ins. Co., Inc.*, 481 So. 2d 878, 881 (Ala. 1985) (citing *Upton v. Mississippi Valley Title Ins. Co.*, 469 So. 2d 548 (Ala. 1985)).

"Whether a provision of an insurance policy is ambiguous is a question of law." *Herrera*, Nos. 1031115 and 1031165, 2005 WL 388524, at *2 (citing *Turvin v. Alfa Mut. General Ins. Co.*, 774 So.2d 597, 599 (Ala. Civ. App. 2000)).

---

[34] Doc. no. 1 (appended complaint), ¶ 4.

> To the extent the language of an insurance policy provision is ambiguous, all ambiguities must be resolved against the insurance company. *Twin City Fire Ins. Co.*, 817 So. 2d at 692. However, the parties cannot create ambiguities by setting forth different interpretations or "[by inserting] . . . strained or twisted reasoning." *Id.* Moreover, the mere fact that a word or a phrase used in a provision in an insurance policy is not defined in the policy does not mean that the word or phrase is inherently ambiguous. *Id.* If a word or phrase is not defined in the policy, then the court should construe the word or phrase according to the meaning a person of ordinary intelligence would reasonably give it. *Id.* The court should not define words it is construing based on technical or legal terms. *Liggans R.V. Ctr.*, 575 So.2d at 570.

*Herrera*, Nos. 1031115 and 1031165, 2005 WL 388524, at *2 (alterations in original).

## C.   State Auto's Insurance Policy

All parties agree that Ms. Brown suffered "bodily injury," as that term is defined in the State Auto policy. The dispositive issue in this case, therefore, is whether her injuries were "due to [the] rendering" of "any professional services," including "any health service or treatment." If so, Ms. Brown's injury is excluded from the scope of State Auto's insurance policy, and defendant's motion for summary judgment must be granted.

Fisher testified that Ms. Brown had completed only "a section of her treatment, or portion," when she fell. Although Ms. Brown had completed her knot-tying exercise, she was scheduled to proceed to the "push sled" and "pull sled" routines, among others. Ms. Brown's accident occurred, therefore, during her physical therapy session. Fisher also testified that patients "would not be up [on the exercise platform]

11

were they not under the direction of the therapist . . . there's no [other] reason for you

to be up there."  The court may reasonably infer, therefore, that Fisher directed Ms.

Brown to ascend and then descend the platform in order to perform her prescribed

exercise.

The court finds that Alabama Rehab (through Chad Fisher) was "rendering" a

"health service or treatment" when it directed Ms. Brown to descend from the

platform during her physical therapy session.  The court also finds that Ms. Brown's

injuries were "due to" this act.  Accordingly, the exclusion in the State Auto policy

applies, and defendant's motion for summary judgment is due to be granted.[35]  An

appropriate order will be entered contemporaneously herewith.

---

[35] Plaintiffs contend that the exclusion in the State Auto policy does not apply because,

> [i]n the present case, Brown had finished her treatment and was descending the steps
> after she finished her physical therapy session . . . . According to [Chad] Fisher's
> testimony and [Ms.] Brown's treatment plan, Brown's treatment did not call for step
> exercises.  Therefore, Brown was merely using the steps to gain access to the
> treatment station, just as she used the hall, stairs, and/or elevator to gain access to the
> room where the treatment station was located.  Moreover, her descent from the
> platform was in no way a part of her treatment, or professional services provided by
> Alabama Rehab.

Doc. no. 13 (Plaintiffs' Response) at 9-10.  This argument is unpersuasive.  The evidence clearly
indicates that Ms. Brown had not "finished her physical therapy session" when she fell.  She had
finished "a section of her treatment, or [a] portion."  The evidence also refutes the contention that
Ms. Brown's "descent from the platform was in no way a part of . . . .professional services provided
by Alabama Rehab."  Alabama Rehab (through Fisher) *directed* Ms. Brown to descend the platform
stairs *during the course* of her physical therapy session.

DONE this 23rd day of May, 2005.

_____
United States District Judge